All right. Thank you. We're now ready to call... Are we good to go, Judge Gould? Yes. Okay. We'll now call our fourth case set for argument today, Yurok Tribe v. Klamath Water Users Association, case numbers 23-15-499 and 23-15-15-521. May it please the Court, my name is Brittany Johnson and I'm arguing on behalf of Appellant Klamath Water Users Association. I would like to reserve three minutes for rebuttal. In response to the Court's question from yesterday's order, my argument will focus on KWA's first counterclaim. Mr. Reitman will be addressing the Court's questions on the status of Klamath Irrigation District's challenge to the OWRD order. KWA's first counterclaim asks for a clear declaration that reclamation does not have discretionary authority to curtail or to direct the curtailment of storage, diversion, and delivery of water from the project for irrigation to benefit threatened or endangered species and therefore Section 7A2's no jeopardy and consultation requirements do not apply. The Court has jurisdiction over the first counterclaim and may proceed to decide the merits of the case. KWA brought that counterclaim based on reclamation's legal determination that it can curtail irrigation deliveries and manage the project for ESA purposes. It is this determination under which reclamation operates the project to short its contractors and instead release the water for minimum flows in the Klamath River for salmon. This plays out every year in the annual operations plans and in all but the wettest years and the project is shorted and does not receive a full supply. This means land is fallowed that would otherwise be planted. Paragraphs 4, 5, 6, and 101 of the U.S. Cross Claim describe reclamation's determinations and paragraphs 67, 68, and 69 of the counterclaim describe KWA's dispute. And that first counterclaim is a separate claim than the preemption challenge brought by the United States focused on that 2021 OWRD order. To the extent that the Court is still concerned about potential mootness, Center for Biological Diversity v. Loan sets forth that standard and that case is reported at 511 Fed 3rd 960 where both injunctive and declaratory relief are sought but the request for injunctive relief is rendered moot during the appeal. The case is not moot if declaratory relief would nevertheless provide meaningful relief or the case in controversy still exists if the challenged governmental activity has not disappeared and cast a substantial adverse effect on the interests of the parties. Today, right now, water users do not have a full allocation of contract supply despite the lake being full for the first time in four years. There's still going to be a shortage this year to the contractors so this is a continuing and wrongful action and reclamation's determination of its discretionary authority controls the project every year. Granting the declaratory relief requested in KWA's counterclaim that reclamation does not have that discretion to curtail the storage delivery and diversion of water for irrigation for species will provide that effective meaningful relief to KWA's members. Controlling authority from this court supports KWA's position. Most recently, last month, the court issued an opinion in NRDC v. Holland and decided the same issues presented here on discretionary authority under executed contracts. That court affirmed that the Ninth Circuit affirmed that once an agency executes a contract it retains discretion to benefit listed species only to the extent permitted by the agreement's terms. The court reviewed familiar, excuse me, similar contract language in long-term water contracts that limits the liability of the United States for shortage as a result of drought or other causes and concluded that a shortage provision does not give reclamation the discretion to alter the contract to benefit listed species or to reduce the amount of water diverted under that contract at its discretion and that conclusion is consistent with this court's earlier en banc decision in NRDC v. Jewell from 2014 where the court held that nothing in the shortage provisions and water service contracts for the Central Valley Project requires reclamation to take actions to protect species. The United States here relies solely on the shortage provision and the Klamath Project contracts to support its position that it has discretionary authority to curtail project diversions and this argument has been squarely excused by this court twice. The Klamath Project is one of the first reclamation projects authorized and constructed under the 1902 Reclamation Act. After a session of submerged lands by the states of Oregon and California for reclamation purposes, the United States built out the diversions and canals and then executed contracts with landowners. Those contracts captured the essential framework of federal reclamation law. Landowners would repay the and the Secretary of Interior acting through reclamation promised to store and deliver irrigation water to those lands. Today the Klamath Project's main diversion works and hundreds of miles of canals, laterals, drains and pumping stations are operated and maintained and in some cases owned by non-federal actors. The idea that reclamation has this expansive federal authority over the complex network of canals, dikes, drains and pumps, that's a myth. In the past, the Klamath Project transferred the operation and maintenance of those works to the irrigation districts as well as the contractual obligation to serve other contractors. Congress enacted legislation specifically approving those contracts with Tule Lake Irrigation District, Klamath Irrigation District and Klamath Drainage District and reclamation now only owns Link River Dam and directs its operation to store or release water. The district court did not release, excuse me, the district court. Can I just ask, in order to rule in your favor, and I know we've got the mootness question which I guess we'll address separately, but wouldn't we have to find that the Bureau of Reclamation doesn't have any discretion under the agreements to divert the water? Isn't that the ultimately the question we're being asked to decide? That they don't have, you would have to rule that they don't have discretion to curtail irrigation. And so that basically the contract requires them to fulfill the irrigation responsibilities at the expense of anything else. Isn't that what we would have to find? Well, you would have to apply the test from EPIC and as it is applied in NRDC v. Holland and look at the terms of the contracts and analyze whether those terms allow reclamation to either alter the or re-describe the terms of those contracts in our opening brief in quite in detail. And there is no such language that allows reclamation to go back and revise the contracts. And I don't understand them to be making that argument. I thought, and I guess we'll hear from them, whether, I thought their position was the contracts just don't guarantee, they don't interpret the contracts the same way you do. That you are guaranteed under the contracts to have irrigation water before it's at the expense of anything else, such as ESA obligations. Well, these contracts, your honor, were executed in the 1900s and 1910s. And the contract language says things like the United States will store, will impound, will deliver water. So that is the focus of the language, that there's a non-discretionary obligation to deliver water. And there's nothing in the contract that allows reclamation to curtail that diversion for the benefit of species. I'm sharing time with the other appellant and I'd like to reserve the remaining time for rebuttal. Thank you. So you'll be doing the rebuttal? Mr. Reitman represents a different appellant, so we're sharing 20 minutes. Oh, so you'll both be doing rebuttal. Okay, got it. Thank you. May it please the court, Nathan Reitman representing the Appellant Climate Irrigation District, I would like to reserve three minutes of my time. The district court's preemption ruling violates the Fifth Amendment to the United States Constitution because it takes a adjudicated water right determining the climate adjudication that belongs to the Climate Irrigation District and gives it to the United States of America for public use without payment of just compensation. There are three fundamental reasons the court made this unconstitutional ruling, three errors. First is that it erroneously viewed the Endangered Species Act as a source of authority that gives reclamation the right to use water. In reality, it's black letter law, the Endangered Species Act does not give agencies any authority they don't otherwise have under their enabling act. Second, the court applied a freewheeling obstacle preemption analysis instead of the direct conflict preemption analysis that is required under California of the United States. Third, the court failed to recognize that there are genuine issues of material fact for trial in regard to whether or to what extent the United States can comply with the Endangered Species Act, the Reclamation Act, the McCarran Amendment, and Oregon State Law at the same time. And we've discussed those factual issues in the brief. So I would pause there. I'd be happy to answer any questions the court may have or I can delve into these. Well, can you address this mootness question? Because I think we got a little hung up on it and I don't know if we're asking the right questions or... Yes, I would be happy to address it. It would help me. Where's the state litigation? Because isn't the whole issue here that there was a ORWD order that was addressed? That's been withdrawn now, correct? Right. And that allowed, the original order allowed the irrigation district to get the water that it needed? So under Oregon law, 540.210, the Oregon Water Resources Department, if there's a dispute between a reservoir owner and a water user, the way the water rights are enforced is the complaining party goes to the Water Resources Department and tells them to distribute the water in accordance with state law. That's what we did. They didn't do it initially. We went to court, compelled them to do it. And they ruled in your favor, right? Right. So the court, yes, the court ruled. And now that's been withdrawn? After the court entered an injunction, after the court below here entered an injunction. Federal court. The federal court entered an injunction saying that they're barred from enforcing it. And at the same time that they withdrew it, we say that that's procedurally improper. And that's the state court proceeding that you're talking about in that, okay, if they want to issue a different order, that's fine, but they have to issue an order on how the water is distributed in accordance with state law. There's just a vacuum now? Is that what you're... Essentially, yes. I thought that was on appeal. So maybe that's where my misunderstanding is. I thought you had appealed the withdrawal and said, no, you can't withdraw it. Yes, because the order that OWRD issued, the United States challenged it in this case. We also challenged it because there was an aspect of that order that we also did not like in terms of how it viewed evaporation. Then OWRD in response to this court's ruling and the fact that the state court ruling compelling it to decide the issue was thrown out on technical grounds, it withdrew the order to the Bureau. And then we went, we are saying, no, you can't just withdraw it and say nothing. You have to give us a final order to challenge. What is your determination about how water is distributed? In light of the federal court ruling, how much water under the ESA is Reclamation entitled to divert down the river? We don't know. The decision in this case doesn't say. And there's no pending decision in the Oregon state on this issue? So in the state court case I'm talking about specifically, we have it stayed pending the outcome here because there's a lot of resources being expended. What is being, what exactly is stayed? Our KID's contention that OWRD has to issue a different order in lieu of the one that it withdrew that says how water is distributed. You know, okay, this court has said for now that, you know, ESA water goes downstream. Okay, how much? Like it needs to determine, these issues aren't decided by this case. Right. We have no control over that. Right. I'm not asking you to decide that. Okay. And the thing I submitted yesterday, which was also in the record anyway, but prior to the 2021 court ruling compelling OWRD to issue some type of order that was appealed and thrown out on technical grounds, there was an earlier 2018 order compelling them to distribute water based on state law. And the irrigation season ran out. They didn't really, you know. But anyway, that order has been appealed. That appeal's been dismissed. I mean, that's res judicata. They are under an order to distribute water in accordance with state law. State law requires them to distribute water in accordance with state law. But you don't have an order to that effect right now. Right. However, and I mean, the United States can characterize its own pleadings. I think if you look at what they were asking for, they were talking about any and all successor orders, paragraph 10 of their. They wanted to enjoin those orders. That was their counterclaim. Their counterclaim is the United States or the state of Oregon cannot make an order. I said enjoin. That's wrong. They wanted to hold those orders preempted, basically. Right. And any other order like them. Right. But the issue here with respect to the Endangered Species Act is still going to be an issue. Correct. And the other thing I mentioned in what I submitted yesterday is it's a little bit different, but substantially similar issue is pending in U.S. District Court right now. It's a case that we filed in the adjudication saying that, hey, they can't distribute water this way, contrary to the adjudication. And it's, as a practical matter, sitting there kind of waiting for this to resolve. Okay. But I mean, this is a live, live issue. Okay. Do you want to reserve time? I want to reserve three minutes. Yeah, three minutes each. Okay. May it please the Court. Good morning. John Smeltzer for the Bureau of Reclamation and the National Marine Fisheries Service. Let me start also with the jurisdictional questions. So hopefully we can clear that issue up. And I want to start with the District Court's decision, and particularly page two of the decision, which is at 1 KID excerpt of Record 4. There the District Court specifically granted summary judgment in favor of the United States on the first cause of action in the United States cross-claim. And then it issued two points. It said, number one, the Bureau must comply with the ESA in operating the Klamath Project. And number two, the O.W. order is preempted by the ESA and thus violates the questions about the second part. We submit that there is still a lot of controversy with respect to the overarching issue, the controlling issue that really controls the second question. Which is whether you have an obligation under the ESA. Right. Whether the ESA section 7 applies to the project as a whole. Right. That's the basic question. When the Court says, does the ESA apply to project operations, the District Court is reclamation is operating the project in accordance with the ESA. That is consulting on the ESA with respect to the project as a whole. So we have to, your position is we have to decide, it sounds like there's agreement, we have to decide that question. Nobody's really disagreeing with that position. That we have to decide the section 7 obligations. That's correct, Your Honor. But you would agree, well, I don't know. What's your position on the second one as far as the, I mean, this is strange because we don't have it, we don't have a State Court order to know what the baseline is by which we're comparing the obligations. Right. What we submit is the declaratory judgment, summary judgment, and the injunction on the second point are controlled by the decision on the first. Right. What reclamation did is generate an operating plan based on the understanding that the ESA applies to the project as a whole. That is to the storage of water in Upper Klamath Lake and to the diversion of water for irrigation purposes. And that obligation conflicts with the order to the extent that the order says you can't release stored water. Right. Where there is that conflict, it conflicts with the operating plan and it doesn't allow. So all you would have us do, I'm just trying to simplify this, all you want us to do is decide the ESA obligation issue and then the State Court can go back and figure out, okay, now taking that into account, what can we do, what does State law allow for the diversion, how much water needs to be diverted? Your Honor, I'm not sure we'd agree that there's a role for the State Court to play necessarily. I said State Court, it's really the OWRD, but you don't even agree with that. Ultimately, not necessarily. I mean, it depends on what OWRD is attempting to enforce, right? If there is a senior user on the Klamath River in Oregon that has a dispute with the project, you know, priority administration, that's something that an OWRD needs to do and can do. The dispute in this case has involved downstream water rights in California, and that's Phase 2. That's not before the Court at the moment, but we submit that that's an interstate issue that's not within OWRD's jurisdiction or the jurisdiction of the State Court under the KBEA. With respect to the Endangered Species Act, the issue is, can the reclamation operate the project in this manner, right? Do consultation on the project as a whole, whether or not there are any assuming that there are no. And so, on the main issue that you're asking us to decide, does that boil down to whether there's a man, whether these agreements give you discretion or not to divert any of the water? I think that's essentially right. There are two questions the Court asks always determine whether Section 7 is applicable, right? The first question is, is there Federal agency action? The second question is, is that Federal agency action discretionary, right? Both of those issues need to be addressed in this case because the case law that KWA is citing, some of it applies more specifically to the first issue, right, is there agency action, and some to the second issue. And I submit that those issues, while they overlap, they are separate issues. What about the Patterson case? Which issue does that, in your opinion, apply to? Ultimately, both, Your Honor. We believe, of course, the Supreme Court's decision in Home Builders came down after Patterson, so it raised questions about what is that discretionary, you know, what do you need for agency discretion? But let me start with both the issues and explain how it applies, right? So on the question of agency action, right, the Court has to understand how the project is operated. Reclamation doesn't physically operate the project, right? Reclamation contracted with Pacificor to operate Link River Dam, which controls the storage, and then Reclamation contracted with the parties, the water users, over the distribution of and the supply of project water, and those contracts give the water users the authority to operate the diversion works and the distribution works, as Ms. Johnson mentioned. So Reclamation's not physically doing, you know, pulling the levers. It's Pacificor, it's the water users. Reclamation operates the project by instructing the different groups how to run the project, right? And so the question is, does Reclamation have that authority, right? Patterson reviewed the contract with Pacificor and said, yes, the authority to run the dam. It's still agency action. Well, yes, right, because the authority to operate the dam, Pacificor had no water right, right? They don't have any, they didn't have any ability to say, we want to run the dam in this way to generate power. They have no water right, and so Reclamation could step in and say, we're running the dam for irrigation purposes, but that's Reclamation's duty and authority. The contract, as Ms. Johnson notes in her brief, has expired, right? But that doesn't change the holding of Patterson, because what Patterson was about was what was reserved in the contract. What was Reclamation's inherent authority under the statute and under the other contracts, right? And Reclamation doesn't give away the authority to, over the dam and any other contracts. So it's an authority that was reserved. Patterson said we still had it when the contract was in effect. We still have it now. The contract has expired. Pacificor is still operating the dam. We're in a transition. So what did home builders do to that? Well, that's the second piece, and if Your Honor doesn't mind, one other point on agency action. The agency, the other thing that Reclamation is responsible for doing for operating the project as a whole is determining the available water supply. There is nothing in the contracts that puts an amount that each water user has, right? There's just the obligation to supply water from available water, and then each individual user's right is based on contractual priorities and equitable proportioning, right? Which Reclamation reserved the authority to do. So Reclamation not only controls the storage, but Reclamation determines what's available for use by all the irrigators. And so that's what makes this case different from Sierra Clubby, the Babbitt, different from Epic-Simpson, and different from NRDC v. Holland, right? Because it's talking about the specific obligation, affirmative obligation, continuing obligation to supply water by storing it and then determining what's available. So to the home builder's point, that's the agency action. That's the agency action. So when you get to the question of discretion, right, which was raised in home builders, this Court addressed what that means in its en banc decision in NRDC v. Jewell. The KWA cites that standard in the reply brief at page 3. And the standard, as they cite, says, if another legal obligation makes it impossible for the agency to exercise discretion for the protected species benefit, then there's no discretion, right? What KWA left out of that quotation in the reply brief is the word only, right? What this Court said is only if another legal obligation makes it impossible for the agency to exercise discretion for the protection of a species benefit does only in that circumstance is there no discretion to comply with the ESA. And so what we're saying with respect to discretion is, if you, and I come straight out of home builders, right, because there was a mutually prohibitive statutory duties, right, in the Clean Water Act and the Endangered Species Act. And this Court said, look, where one act says you have to do something specific upon certain specific conditions, you know, no exceptions, that's a mandatory duty. You can't add anything. The ESA can't add anything there. But that's the only circumstance where you don't have discretion, right? The statutes in this case are statutes that provide open-ended authority, right, the authority to build reclamation projects, the authority to operate projects, the authority to enter contracts. And the, but could the contracts impose that obligation? If the United States had contracts that said, look, we're going to allocate this amount of water to the irrigation districts, presumably that would take away your discretion. But that's not what the contracts say, is it? That's not what the contracts say. And it's also, I mean, it depends on if they say we will supply this subject to availability and subject to the ESA, then even the, that contract would apply. That's O'Neill. That's the exact case in O'Neill. That's what O'Neill said, right? In this case, we have even more discretion because we don't have a specific amount, right? But what we have is that shortage clause modifying the contractual duty to supply. And that's what's different than O'Neill. It's also different from NRDC v. Holland, the case that was most recently decided, because that's a case that involved pre-project rights, right, where the United States is agreeing that certain rights exist. It's agreeing that the irrigators can exercise those rights without interference from the Bureau of Reclamation. And, Your Honor, in that case, the issue was reinitiation of ESA consultation on contract renewal, right? So it was really about was there discretion to change the contract terms that were exercised by the project users, which is different from supply. So what we submit is the shortage clauses have to be read in the context of the entire contract, have to be read against the background of the statute. And in that context, right, O'Neill still controls. Patterson relied on O'Neill, and that's why Patterson addressed the second part as well, right? Patterson cited O'Neill and cited the fact that these contracts are subject to the ESA because of what O'Neill held. And that's what — So how does Oregon law still apply, if at all, here? Because Oregon law still has to control the rights. It ultimately is the arbitrator. I mean, arbiter of who has the rights under Oregon law. Now, apparently, we're injecting the ESA on top of that. But do we need to consider Oregon law? And should the district court have considered Oregon law in making this determination? Yeah. Oregon law applies to the extent that it provides the project water right. It provides the maximum project water right. It says where water can be diverted, you know, at what volumes and all those sorts of things. The ESA acts as a restriction on the exercise of the water right. And that's where we part company with KID, right, when talking about their arguments of takings and whatnot. But what KID seems to miss is that what Oregon law or what the ESA is doing here is operating on the exercise of a water right. Well, I understand that. But don't — I mean, I guess that's why I'm asking whether there's a fundamental Oregon — question of Oregon law that we have to delve into. Or would you say, no, in order to give you the relief that you're seeking, we just need to look at the ESA and the discretionary function under the contracts. That's it. We don't have to consider Oregon law. I think it's just the intersection to resolve the arguments that KID raises. It's just the intersection of the ESA and the fundamental property law principle, which is also a principle of Oregon law, which is property rights are discretionary, right? Property rights themselves are permissive. You can choose to operate — to exercise the water right or not, right? And reclamation is choosing to operate — it's — let me — but I don't want to suggest to the Court that reclamation has absolute discretion to choose when to exercise its rights, right? It has contractual obligations. But the contractual obligations are then subject, per the contract terms, to the overriding law. So reclamation is not just choosing willy-nilly not to exercise its rights. But what it's saying is when the ESA intersects with that property right, the property right gives way. And that's not contrary to State law, right, to say that when the ESA puts a restriction on the exercise of a property right, it doesn't violate any State law principle. And I want to draw the Court's attention to one sort of nuance of State law and water law. We say in our brief, and I said here again, right, that property rights, they can be impacted by the ESA in their exercise. And it's the same is true for water rights. It's not different. And that's what this case is really about. There's a nuance with respect to water law, which is kind of a use-or-lose principle, right? If you don't use your water right, you can lose it. But in Oregon law, right, Oregon says that principle, that forfeiture principle, does not apply if the law — or if the water right cannot be used as a matter of law, right? Oregon's law specifically recognizes that there are circumstances where there may be an overriding law, like the ESA, that prevents the use of a water right. That's consistent with Oregon. Oh, meaning — okay. Let's give some time. It sounds like you're splitting here three ways. So, Ms. Goldman, is that — thank you, Mr. Smeltzer. Thank you, and may it please the Court. My name is Patti Goldman. I represent the Yurok Tribe and the Commercial Fishing Groups. I would like to address jurisdiction of the Holland case and the question of how does Oregon law apply, if I have time. On justiciability, under the Declaratory Judgment Act, if there is an actual controversy that's amenable to a judicial resolution, then the Court can issue such an order. As we said in our brief, we think the threshold question of whether Section 7 applies to operation of the project is such an issue, but there are many other issues that have been presented by the water users that go too far, like which actions are discretionary and should be in the next operation plan, what should be in the baseline, interpretations of each and every contract, and whether there's a takings of water rights. So we would — But the interpretation of the contract does seem to be before us, because doesn't that go to whether it's mandatory or discretionary under the ESA? It does. And if you look at the core contracts, then there is ample discretion. You're just saying there's other ancillary contracts that aren't relevant. And there are, like, almost 200 contracts. So — Anything you can do to keep us from having to read 200 contracts would be helpful. Yeah. And I think the question of whether there's some discretion for purposes of Section 7 can be answered first as a matter of statute and the delegated authority to operate the Reclamation Acts and engage in any and all acts that are necessary and proper. This Court in National Wildlife Federation and the San Luis and Delta Mandota case has held that that broad language leaves ample discretion. And that really addresses the homebuilders case. On the contracts, the core contracts, which are the bulk of the water for the original project and have seniority, authorize Reclamation to apportion deliveries when there are shortages for drought and other causes. And that language, drought and other causes, was construed in O'Neill to include Endangered Species Act compliance. It is not the same language as in Holland, contrary to what Ms. Johnson said. As to Holland, it was a very different question. It was reinitiation on a renewed contract. There was no question that Reclamation had to consult on the Central Valley project as a whole. This Court has held as much, and it did so. There was no question that Reclamation had to consult on renewal of the contracts. And there's a very unusual provision in the renewed contract that obligates the contractors to abide by any requirements in the biological opinion on the renewal. So Section 7 consultation and requirements were baked into the contract. There was really no question that Section 7 applied to the project as a whole and to the renegotiation. I'd like to turn to the question of how does Oregon law apply. This Court has resolved that issue in the case called In Re, Klamath Irrigation District, where the Court held that the Klamath Basin adjudication did not address Endangered Species Act compliance and did not address the contracts which established the relationships between the districts and the Bureau. And therefore... That's different than the Patterson case. That is. That's just a recent case, just this last year. And it was about the McCarran Amendment and whether the issues had to go back to the Klamath Basin adjudication court when they were about Endangered Species Act compliance. And this Court held no. They did not because that court has no jurisdiction over them. Now, that's a matter of Federal law and this Circuit precedent. We don't have an analog under Oregon law, and I am sure that Klamath Irrigation District is going to keep pressing this issue in State court. So, you know, there may be a conflicting ruling at some point under Oregon law. That is not the position that Oregon has taken. But even if there were conflicting, you would have preemption if we'd said that the ESA governs, right? Yes, and we believe that would be the proper determination. All right. I think we'll give one minute to whoever's up next. Good morning. Jay Weiner on behalf of the Klamath Tribes. And I think that your focus on this question of discretion and what the discretion of the Bureau of Reclamation is, is absolutely the right place to be. There is not a need here to engage with substantive questions of Oregon law because ultimately those questions of Oregon law will need to interrelate and adapt to what this panel's decision is in regard to the overarching controlling Federal. As much as we want them to go forward their kind of way, everybody's in a standstill. Everybody. Waiting for everybody else. That is correct. Everyone is absolutely at a standstill. And the reason that the Klamath Tribes are here speaking this morning, in particular on this Oregon water law question, is that the Klamath Tribes also have decreed water rights in the Klamath Basin adjudication that were determined in the ACFOD. And so these questions of the interpretation of Oregon law relate very importantly not just to the state law-based water rights that Klamath Irrigation District asserts, but to the federal law-based water rights that the Klamath Tribes have determined in the adjudication. And these are all issues that... I mean, it does seem odd if there's no, if there's no, if there's not enough water, it's like the ESA says, well, the fish get it first. I mean, I guess that's the rule, but it seems counterintuitive that at some point we could have farmers who can't grow enough food for us. I guess there's some emergency hatch that would kick in under the ESA. Well, so here, I mean, there's a few pieces in response to that question, Judge Nelson, one of which is that the ESA provides one set of overlays. But the Klamath Tribes water rights, which are time immemorial water rights, senior to the water rights of the irrigators, are predicated on the tribe's treaty rights to hunt, fish, trap, and gather. But you agree that ESA even supersedes your rights. You're just saying in priority, you've got ESA, then you've got the tribes, then you've got the... I appreciate you're asking that question because I don't concede that position. That is not an issue that is on the face presented by this case. That's too bad. We were looking for other issues. I can give you about seven more if you want, but I don't, but part of what, generally, what I'm here to do in part is to indicate that there are already the massive issues before you, as well as a whole, several other universes of issues that will need to be aligned around whatever it is the panel decides on the narrow issue presented in this case. We advocated to the district court to make a modest and narrow ruling, which the district court did, and we would encourage the panel to do the same thing because this decision will ramify into a whole bunch of other proceedings that most likely, some of which will probably return to you. Others will need to be fought out in state court and determined elsewhere. And so we, from the Klamath tribe's perspective, would just encourage you to rule as modestly and narrowly as possible because any dicta that goes into the opinion is going to come up in the South. But you want the ESA to apply? We do. No, we support the position of the United States and the Yurok tribe in this case. Thank you. Thank you. So you agree there's a lot of controversy here, then? Yes. Everybody basically agrees there's a lot of controversy. Yes. There was never a jurisdictional defense to either the cross-claim or the counter-claim, and there are lots of sovereign parties here, so they would have asserted one. But I do want to emphasize that the counter-claim, KWA's first counter-claim, is not dependent on the OWRD order. It's asking for a declaration of reclamation's authority to curtail irrigation. It really doesn't deal— In the N. Ray Klamath irrigation case that was just mentioned? No. This issue has never been decided. What is discretionary under the contracts and under reclamation's operation of the project and its authorizing legislation? It wasn't decided in Patterson either. That, as the United States described, that case dealt with the 1956 COPCO contract. And if you read the very first sentence of that opinion, it states the limitation, which this appeal involves a basic contract issue, whether KWA and other irrigators in the Klamath Basin are third-party beneficiaries to a 1956 contract between BOR and COPCO. It was talking about the COPCO contract. But doesn't Patterson also say that the ESA applies to the Link River Dam? It says that there was a third-party beneficiary analysis where the court went through the specific contract with COPCO. And then at the end, there was a discussion of whether reclamation has authority to direct dam operations under the 1956 contract. So whether reclamation, based on its contractual relationship with COPCO, could direct COPCO to operate the dam to comply with the ESA. It never decided the scope of the ESA obligations, and it never decided whether— But I mean, I thought one reading of it might be that that was dicta in Patterson. And it sounds like you're not taking that position. You're just saying— We would very much take the position that was dicta. It does not apply to—there was never— Patterson dealt with the 1956 COPCO contract. And all the statements about reclamation's authority to direct or take over the dam, that's under its contractual relationship with COPCO. That contract has expired, and it's really not an issue. And there have been so many cases since Patterson that the United States really has to confront and deal with, including just last month in NRDC v. Holland, the California Sport Fishing Protection Alliance v. FERC case, Epic, Babbitt. And in response to Ms. Goldman's characterization of NRDC v. Holland, that was incorrect. The question on those water contracts was whether reclamation—whether the ESA continued to apply to the performance of the executed contract based on the contract terms. So it is directly on point, and it's holding on Articles 3i and 3h of those settlement contracts, those long-term water contracts, is directly on point to the language in the Klamath supply contracts about whether drought and other causes or legal obligations can give reclamation authority to just reduce water deliveries at its discretion. I just have a few other— We probably—sorry, but you're splitting time, as I understand it, so we probably ought to give two and a half minutes to your colleagues. Thank you, Your Honor. Thank you. Thank you, Your Honors. A few quick high-level points I want to get to. And the first and most is absolutely backwards. You cannot figure out how much discretion the Bureau has under the ESA until you know what authority it has under the water rights to use water. Water is distributed based on— Does that mean you're saying that the state court has to act for—that the state court has to give them that? Yes, in the adjudication. Water is distributed based on water rights. It is not distributed based on— What would you have us do? You would have us wait—I thought you asked the state court to wait for our decision. What I would have you do on the discrete issue, the issue the KID is concerned with, is reclamation is diverting water that KID has been determined in the adjudication to own. It doesn't own it. It is diverting that water, and it is using it for in-stream purposes. The question, does it have discretion to do that? You can't answer that question without knowing whether or not it has a water right to use the water, unless you want to hold that the ESA provides a right that doesn't exist in the Reclamation Act, doesn't exist in the water rights to use water. Go into your question about the Link River Dam in Patterson, for example. At that time, the water rights had not been determined. So the court said, yeah, they have discretion under the ESA to operate that dam however they want it. Because at that point in time, the Bureau had the authority to use water however it wanted. But once the water rights were determined in the Klamath Basin adjudication, its discretion was limited. But what would you have us do? Would you have us do a—I mean, do we have to look at Oregon law and determine what the water rights are under Oregon law? I would have you certify the question—I mean, to the extent there's confusion about it, certify the question to the Oregon Supreme Court and ask the Oregon Supreme Court, does Oregon law allow— It's not even really feasible here. You'd never get an answer within any reasonable time of what you would need to act. Well, we have to have an answer because answering— What is the question that you would certify? Whether under Oregon law, reclamation can divert stored water from Upper Klamath Lake for use in in-stream use in the Klamath River without a water right. If it can— Because your position is if they can't, then there's no discretion and therefore the ESA doesn't apply. If you don't have a water right, you can't use water. The ESA does not give you a water right. And the thing is, you talk about changing discretion, we're talking about contracts. The reclamation has no discretion to change the water rights. None. Okay. Can I—we would normally end. I would like to hear for 30 seconds from Mr. Smeltzer about this last point about certifying a question to the Oregon Supreme Court. Can you give the United States position on this? Quickly, Your Honor. I think the issues have been settled. There's been a case that was already certified to the Oregon Supreme Court in the Bailey litigation that began—it was originally called Klamath Irrigation District. Is certified? No, no, no. The Federal Circuit. It was certified from the Federal Circuit. And it was a question about when there are jointly owned rights. I mean, how does it—what is the nature of the right of the party that didn't appropriate the water? It's a slightly different circumstance because— But you think this has already been addressed? Well, partially there and partially—there what the court said is that the contracts determine the nature of the water rights, right? When parties—like when we appropriate water to provide to supply to irrigation districts and it's made on condition of a contract, the contract is baked into the property right. Do you think we just need to look to the contracts? We don't need to certify this to the Oregon law or Oregon Supreme Court? Correct. And it's also because it's this fundamental question about the non-exercise of a right. Well, I agree, but there is something to this idea that if the—I mean, if under Oregon law, there's no discretion for the Bureau of Reclamation, then doesn't that answer the ESA question? As I explained, that's—I mean, that's just not Oregon law. OWRD agrees on that point as well in their brief. All right. Thank you. Thank you to all counsel for your arguments in the case. And the case is now submitted and we're in recess till tomorrow. All rise.
judges: SCHROEDER, GOULD, NELSON